**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
In re:

MALEASE 14FK CORP.

                     Reorganized Debtors.     **MEMORANDUM OF**
----------------------------------------------------------X     <u>**DECISION AND ORDER**</u>
----------------------------------------------------------X     05-cv-03989 (ADS)
RM 18 CORP.,

                     Appellant,

         -against-

AZTEX ASSOCIATES, L.P., AZTEX
CORPORATION, J.P. MORGAN TRUST
COMPANY, N.A.,

                     Appellees.

----------------------------------------------------------X


**APPEARANCES:**

**BRAUNER, BARON, ROSENZWEIG & KLEIN, LLP**
Attorneys for the re-organized debtor Malease 14FK Corp.
61 Broadway
18th Floor
New York, NY 10006
        By:     Leslie S. Barr, Esq., of Counsel

**RUSKIN, MOSCOU, FALTISCHEK, P.C.**
Attorneys for appellant RM 18 Corp.
190 Old Country Rd.
East Tower, 15th Floor
Uniondale, NY 11556-0190
        By:     Jeffrey A. Wurst, Esq., and Arthur J. Kremer, Esq., of Counsel

**FOLEY & LARDNER**
Attorneys for appellee Aztex Associates, L.P., and Aztex Corporation
90 Park Avenue
New York, NY 10016
By:    Michael P. Richman, Esq., of Counsel

**GARDNER CARTON & DOUGLAS LLP**
Co-counsel for appellee J.P. Morgan Trust Company, N.A.
191 North Wacker Drive, Suite 3700
Chicago, IL 60606
By:    Scott Fisher, Esq., and Scott C. Lascari, Esq., Of Counsel

**JPMORGAN CHASE LEGAL DEPARTMENT**
Co-counsel for appellee J.P. Morgan Trust Company, N.A.
One Chase Manhattan Plaza, 26th Floor
New York, New York 10081
By:    Manuel W. Gottlieb, Esq., and Kelesha F. Armand, Esq., Of Counsel

**SPATT, District Judge.**

This appeal is related to the filing of chapter 11 bankruptcy by Kmart

Corporation ("Kmart") in the United States Bankruptcy Court for the Northern District

of Illinois.  The appellant RM 18 Corp., and the appellees Aztex Associates, L.P.

("Aztex"), Aztex Corporation, and J.P. Morgan Trust Company, N.A. ("JP Morgan"),

all had claims in connection with, or arising out of, the rejection by Kmart, as lessee,

of certain commercial leases it had with Malese 18 Corp. the debtor in the underlying

chapter 11 bankruptcy before United States Bankruptcy Judge Dorothy T. Eisenberg.

The Malese 18 Corp. bankruptcy was resolved through a stipulation and order

authorizing Aztex to pursue those claims against Kmart related to the leases, but the

stipulation expressly required the consent of Lawrence Kadish, a principal of Malese

18 Corp. and RM 18 Corp.  Aztex and JP Morgan reached an accord with Kmart regarding a proposed settlement, but RM 18 Corp. withheld its consent.  In response to a motion by Aztex to reopen the case and enforce the terms of the order, the Bankruptcy Court ordered that RM 18 Corp. was unreasonably withholding its consent, and authorized Aztex and JP Morgan to effectuate the proposed settlement. The issue on this appeal is whether that withholding of consent by RM 18 Corp. was unreasonable.

## I.  BACKGROUND

This complex case involves a maze of various real estate and corporate transactions.  The 18 separate leases at issue in this appeal are all identical, and, as noted by the Bankruptcy Court, were one part of a complex transaction structured by Merrill Lynch as a tax shelter and investment vehicle for the parties and Kmart.  Tr. June 28, 2006, H'rg at 37.  The 18 properties were first purchased on November 30, 1982, by Aztex Corp., from a wholly-owned subsidiary of Kmart ("Aztex Properties") for $25,693,939.  At the same time, the properties were leased back to Kmart pursuant to 18 separate leases (the "Kmart Leases"), each with an initial term of 25 years.  The leases contained provisions for the payment of both "Basic Rent" and "Deferred Basic Rent."  The rent under the leases was incurred and accrued in 50 semi-annual installments, but the amount that was actually payable varied for each installment according to a rent schedule.

After acquiring the properties, Aztex Corp. then issued notes in favor of Merrill Lynch Corporate Pass Through Securities ("MLCPS"), which were secured by first mortgage liens on the properties and by assignments of the Kmart Leases. MLCPS then created the MLCPS Trust to hold the notes, mortgages, and lease assignments ("Aztex Loan Documents").

On December 31, 1982, MLCPS sold all of its interest in the MLCPS Trust to Kmart. Kmart financed the acquisition by creating its own trust. To create the trust, Kmart entered into a pooling agreement with NBD, formerly known as National Bank of Detroit.

On May 2, 1983, Aztex Corp. conveyed to Aztex Associates L.P. an estate for 25 years in the land of Aztex Properties and a fee interest in the improvements on such properties. Aztex Associates L.P. assumed the obligations owed to MLCPS under the notes and took title to the property subject to the mortgages. Aztex Associates L.P. then leased this interest back to Aztex Corp. pursuant to a single master lease (the "Aztex Master Lease").

Concurrent with this leasing arrangement, Malese 18 Corp. was formed by Lawrence Kadish and RM 18 Corp. was formed by Howard Kadish to participate in a "sandwich lease" with respect to the lease of the Aztex Properties. A sandwich lease is a lease in which the lessee subleases the property to a third party, usually for more rent than under the original lease. Black's Law Dictionary (8th ed. 2004). The

ingredients to this sandwich included Malese 18 Corp., who became the lessee to Aztex under the Aztex Master Lease and the direct lessor to Kmart under the Kmart Leases.  In this transaction, RM 18 Corp. received from Aztex Corp. a fee interest in the land of the Aztex Properties to commence after the expiration of the estate in years held by Aztex Associates L.P.  Based on the remainder interest, RM 18 Corp. will receive a fee interest in the Aztex Properties on January 1, 2010.  This arrangement was confirmed on May 2, 1983 by 18 separate "Three Party Agreements" between Malese 18 Corp., RM 18 Corp., and Aztex Associates L.P.

On January 22, 2002, Kmart filed for protection under Chapter 11 of the Bankruptcy Code.  Two days later, on January 24, 2002, Malese 18 Corp. filed its own voluntary petition for relief under Chapter 11.  The Malese 18 Corp. case was ultimately resolved through a Stipulation and Order Resolving Issues Relating to Master Lease and Dismissing Bankruptcy Case ("Malese Stipulation") agreed to by Aztex and Malese 18 Corp. and approved by Judge Eisenberg on July 1, 2002.

The Malese Stipulation required all of the capital stock of Malese 18 Corp. to be conveyed to an entity that was to be designated at a later date.  The only asset of Malese 18 Corp. consisted of the Kmart Leases and the related claims against Kmart. The Malese Stipulation required Aztex to pursue any and all claims arising out of or in connection with the breach or rejection of the 18 Kmart Leases.  Under the Stipulation, these claims were defined to include deferred rent, the claims filed by

Malese 18 Corp. in the Kmart bankruptcy, and any other claims relating to the Kmart Leases. Further, the Malese Stipulation stated that "no settlement, or compromise of all or any portion of the Kmart Claims will be made without the prior consent of Kadish, which consent shall not be unreasonably withheld or delayed." Malese Stipulation ¶ 5. While it is unclear from the stipulation which Kadish was required to give his consent, it appears undisputed that it referred to Lawrence Kadish. In the stipulation, it was also agreed that the proceeds or recovery on any of the Kmart claims would be used first to pay the principal and interest on the mortgage debt on the Aztex Properties as agreed to under the Aztex Leases, the Kmart Leases, and the Three Party Agreements. RM 18 Corp. is not a party to the Stipulation and Order, but the stipulation expressly states that RM 18 Corp. has standing to enforce the agreement. Malese Stipulation ¶ 6, 10.

Pursuant to the Malese Stipulation, and in pursuit of the claims against Kmart, Aztex apparently designated JP Morgan as trustee of the assets under the Kmart Leases. JP Morgan then filed a proof of claim in the Kmart bankruptcy for the claims under the Kmart Leases. Thereafter, Aztex and JP Morgan pursued settlement negotiations with Kmart. In the spring of 2005, Aztex and JP Morgan reached an accord with Kmart. The proposed settlement that was reached would allow a Class 5 lease-rejection claim in the total amount of $16,947,571.39, which included, among other items, a claim for Deferred Basic Rent in the amount of $4,290,734.49.

The proof of claim originally filed by Malese 18 Corp. was in the total amount of $72,848,058.00, which included a claim of $29,707,578.00 for Deferred Basic Rent. During settlement negotiations with Kmart, Aztex and JP Morgan took the position that the Deferred Basic Rent owed under the leases would be capped by section 502 of the Bankruptcy Code, and thus limited to $4,290,734.49.

Upon being notified of the proposed settlement, RM 18 Corp. objected because it did not encompass or provide for the allowance of $25,416,843.51 of the $29,707,578.00 in Deferred Basic Rent allegedly owed to Malese 18 Corp. under the Kmart Leases. RM 18 Corp. argued that it was entitled to this deferred basic rent because it constituted a pre-petition claim that was not capped under the Bankruptcy Code. In its brief, RM 18 Corp. notes that such additional monies, if allowed in the settlement, would benefit all parties involved because they would be applied to pay down the mortgage indebtedness on the Aztex Properties held by JP Morgan, in which RM 18 Corp. receives a fee interest in the year 2010 after the expiration of the estate in years held by Aztex.

On June 3, 2005, Aztex filed a motion in the Bankruptcy Court to reopen the Malese 18 Corp. case and requesting that the court: (1) enforce the Malese Stipulation; (2) determine that the proposed settlement of the claims against Kmart was reasonable; (3) find that the refusal by the principal of RM 18 Corp., Lawrence Kadish, to consent to the proposed settlement was unreasonable and deem his consent

given; and (4) authorize Aztex and JP Morgan to effectuate the settlement.  RM 18 Corp. filed a brief response consenting to the reopening of the case and requesting an evidentiary hearing.

On June 23, 2005, an initial argument was held on Aztex's motion.  Aztex objected to the request by RM 18 Corp. for an evidentiary hearing because the terms of the proposed settlement called for the claims to be paid in a distribution of stock, which made the approval of the settlement time sensitive.  The stock could only be distributed on the first day of the quarter, which would be either July 1, 2005 or October 1, 2005.  Aztex claimed that the value of the stock could drop during that time and requested a bond in the amount of 16.3 million to protect its interest if a hearing was granted.  Tr. June 23, 2005 H'rg at 13.  After all parties were heard, the Bankruptcy Court agreed to reopen the Malese 18 Corp. bankruptcy case and ruled that RM 18 Corp. would be entitled to an evidentiary hearing on the reasonableness of its consent only if it posted a $5 million bond by June 27, 2005 at 3:00pm.

At the June 27, 2005 status conference, RM 18 Corp. notified the Bankruptcy Court that it was unable to post the $5 million bond.  However, RM 18 Corp. argued that its refusal to consent to the proposed settlement could be determined to be reasonable without an evidentiary hearing.  RM 18 Corp. argued that the parties had a meritorious claim against Kmart to more than $25 million of deferred rent under the Kmart Leases that could be ascertained from the face of the lease.  Focusing solely on

the issue of whether the deferred rent under the Kmart Leases was capped under section 502 of the Bankruptcy Code, the Bankruptcy Judge found that the deferred rent would only have become due and owing if the lease had terminated, and thus it was properly capped under the Code. Based upon this determination, the Bankruptcy Court found that the withholding of approval by RM 18 Corp. was unreasonable. The court then entered an order granting Aztex the authority to execute the proposed settlement.

Following the Bankruptcy Court's decision, RM 18 Corp. appealed to this Court, arguing that the Bankruptcy Court erred in finding that the consent of RM 18 Corp. was unreasonably withheld, and erred in authorizing the proposed settlement with Kmart. On the other hand, Aztex and JP Morgan presented the "deemed" consent of Kadish to the settlement to the Illinois Bankruptcy Court, which approved the settlement with Kmart. RM 18 Corp. has also appealed the order of the Illinois Bankruptcy Court approving the settlement, but did not seek to stay implementation of the settlement.

## II. DISCUSSION

### A.    The "Scrivener's Error"

Before addressing the merits of the appeal, the Court must resolve certain errors that have been identified by both parties in this appeal. The motion to enforce the settlement in the Bankruptcy Court and the subsequent appeal that was

commenced by RM 18 Corp. have all proceeded in the wrong, but related, bankruptcy case entitled <u>Malease 14FK Corp.</u>, Case No. 02-80587. The correct bankruptcy case to have filed the motion for the relief requested and this appeal is <u>Malese 18 Corp.</u>, No. 02-80586.

The Malease 14FK Corp. bankruptcy case involved the same creditors and similar issues. As in the Malese 18 Corp. bankruptcy, the Malease 14FK Corp. case involved an entity similar to RM 18 Corp. with a similar sounding name known as RM 14 FK Corp. In addition, that case was also resolved by a nearly identical stipulation to the Malese Stipulation, which was drafted by the same attorneys. The use of these similar names and nearly identical stipulations apparently led to the several "scrivener's errors" in this appeal.

First, Aztex conceded at oral argument that its motion to enforce the settlement against RM 18 Corp. was filed in the Bankruptcy Court under the wrong case of Malease 14FK Corp., instead of the case of Malese 18 Corp. Aztex admitted that this error was due to a scrivener's error in the Malese Stipulation that identified the underlying case subject to the stipulation of settlement as case number 02-80587-478—the Malease 14 FK Corp. case—rather than the Malese 18 Corp. case number 02-08586.

Second, the Court noted at oral argument that the Malese Stipulation identified RM 18 Corp. FK Corp. as the entity entitled to enforce the terms of the stipulation,

10

and that this might divest RM 18 Corp. of standing to appeal from the decision of the Bankruptcy Court. RM 18 Corp. explained that this error appeared to be due to a scrivener's error in the Malese Stipulation, and submitted an affidavit stating that no entity named RM 18 Corp. FK Corp. existed. Despite admitting that these clerical mistakes were due to scrivener's error's, RM 18 Corp. requests that this Court vacate the Bankruptcy Court's order and remand the case with leave for Aztex to re-file the motion to enforce settlement in the Bankruptcy Court in the correct case.

The Court finds it unnecessary to vacate the Bankruptcy Court's order due to these clerical mistakes. The filing of the motion and the appeal in the wrong case was left uncorrected by both parties until the Court raised it at this juncture. Lawrence Kadish submitted an affidavit stating that he is the sole shareholder of RM 18 Corp., Malese 18 Corp., Malease 14 FK Corp., and RM 14 FK Corp., thus all of the parties interested in this case have received full notice of all the proceedings in this case, regardless of the case name or number. Accordingly, the clerical mistakes found in the case names are immaterial to the merits of the issues in this appeal. See Fed. R. Civ. P. 62.

**B.      Standard of Review**

A district court hearing an appeal from a bankruptcy court reviews that court's findings of fact under the "clearly erroneous" standard, see Fed. R. Bankr. P. 8013, while its conclusions of law are reviewed under the de novo standard. See In re

Vouzianas, 259 F.3d 103, 107 (2d Cir. 2001); In re Arochem Corp., 176 F.3d 610, 620

(2d Cir. 1999) (holding that "we review the bankruptcy court decision independently,

accepting its factual findings unless clearly erroneous but reviewing its conclusions of

law de novo.") (citation omitted); In re Bennett Funding Group, Inc., 146 F.3d 136,

138 (2d Cir. 1998) (same) (citations omitted); see also In re Porges, 44 F.3d 159, 162

(2d Cir. 1995) (same) (citations omitted).

In undertaking a review of a proposed settlement for reasonableness,

bankruptcy courts are generally " 'not required to assess the minutia of each and every

claim,' but instead 'need only canvass the settlement to determine whether it is within

the acceptable range of reasonableness.' " In re Johns-Manville Corp., 340 B.R. 49,

70 (S.D.N.Y. 2006); quoting Nellis v. Shugrue, 165 B.R. 115, 123 (S.D.N.Y.1994)

(citing In re W.T. Grant Co., 699 F.2d 599, 608 (2d Cir. 1983)).  When a settlement is

approved as reasonable under such a method, the decision is purely based on findings

of fact, and the district court's review of that decision is "restricted to determining

whether there was a clear abuse of discretion."  Nellis, 165 B.R. at 123; see also In re

Johns-Manville, 340 B.R. at 69.

However, in this case the Bankruptcy Court did not limit its decision to the

finding, as a matter of fact, that the settlement as a whole was reasonable.  Rather, the

Bankruptcy Court examined the Kmart Leases and came to the legal conclusion that

the deferred rent, as defined under those leases, was capped under section 502 of the

Bankruptcy Code. Based upon this conclusion of law, the Bankruptcy Court made its determination as to whether Kadish's withholding of consent was unreasonable. Considering that the decision in this case ultimately rests upon that conclusion of law, this Court will review that decision independently under the de novo standard.

**C.      Claims against a Debtor-Lessee under Section 502(b)(6) of the Bankruptcy Code**

A debtor who files a petition for bankruptcy may assume or reject any unexpired real property lease. 11 U.S.C. § 365(a). The rejection of a lease by a debtor gives rise to two distinct claims for the lessor. One claim for pre-petition unpaid rent and a second claim for post-petition future damages. Section 502(b)(6) of the Bankruptcy Code imposes a limit, or cap, on the latter, restricting the amount of future damages a lessor of real estate may recover as a result of the debtor's termination of a lease. The relevant portions of the section read:

> [T]he court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that . . .
>> (6) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds--
>>> (A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of--
>>>> (i) the date of the filing of the petition; and
>>>> (ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus

> (B) any unpaid rent due under such lease, without
> acceleration, on the earlier of such dates . . . .

11 U.S.C. § 502(b)(6).

The Sixth Circuit in <u>In re Highland Superstores, Inc.</u>, 154 F.3d 573, 577 (6th Cir. 1998), set forth a four step approach under the statute to calculate a lessor's claim "for damages resulting from the termination of a lease." 11 U.S.C. § 502(b)(6). First, by applying state law and the terms of the lease, the court calculates the total claim for damages due as of the earlier of the date of filing or the date on which the lessor repossessed or the lessee surrendered the property. <u>In re Highland Superstores, Inc.</u>, 154 F.3d at 577; <u>see also</u> <u>In re McSheridan</u>, 184 B.R. 91, 96 (9th Cir. 1995) (explaining that damages are first determined under applicable state law). Second, the court determines whether 15% of that total is greater than the rent reserved for one year following the debtor's filing. Third, the 15% amount is compared to the rent reserved under the applicable lease for the three years following the filing. Finally, the court calculates the total allowable amount of the landlord's rejection damages, which is the greater of one year's rent or 15% of the total remaining rent, up to a maximum of three years. <u>Id.</u> (citations and footnotes omitted).

Significantly, the cap has absolutely no affect on rent that is unpaid as of the date of the filing of the petition. The cap only applies to "damages resulting from the termination of a lease . . . ." 11 U.S.C. §502(b)(6). The cap was intended by Congress to compensate landlords for the loss suffered upon termination, while at the same time

14

preventing large awards on long-term leases that would bar recovery by other unsecured creditors.  See In re McSheridan, 184 B.R. at 97.  The limitation on damages dates back to as early as the 1934 amendments to the Bankruptcy Act, at which time the bankruptcy laws first provided for any recovery on what was referred to as "future rent."  Oldden v. Tonto Realty Corp., 143 F.2d 916, 919 (2d Cir. 1944).  Prior to that year, courts were generally in agreement that a landlord who has been compensated by being paid past rent up until the petition date, and then regains his original asset by repossession, should not be paid for "future rent" in the place of other creditors who had not received any payment from the estate.  See Id. at 920.

Stated simply, the limitation on "damages resulting from termination of a lease" in section 502(b)(6) provides "the lessor with his actual damages for past rent, and plac[es] a limit on his damages for speculative future rent payments in long-term leases."  In re Vause, 886 F.2d 794, 801 (6th Cir. 1989); see also First Bank Nat. Ass'n v. F.D.I.C. 79 F.3d 362, 369 (3d Cir. 1996) (stating that the bankruptcy provision limits a landlord's claims for future rent).  Within this framework, the limited amount of cases that have dealt with claims for "deferred rent," or similar rental payments that are not due until a later date, have decided that such claims are not subject to the cap imposed on future damages.  See id.; In re Gantos, 181 B.R. 903, 909 (Bankr. W.D. Mich. 1995).

In In re Vause, the Sixth Circuit decided that unpaid rent that does not become "due" until the date of the petition is allowable in full and is not capped under section 502(b)(6) as long as it has accrued prior to the date of the petition. Id., 886 F.2d at 803. Similarly, in In re Gantos, the court found that "deferred rent," which under the lease was considered "additional rent" payable "upon the date of said termination or transfer . . . ," was not subject to the cap. Id., 181 B.R. at 909.

In addition, an authoritative bankruptcy treatise explains that

> deferred rent—that is, rent that was payable for a period prior to the petition date but was to be paid off over time after the petition date—probably counts as rent owed prior to the petition under Section 502(b)(6)(B) and not as future rent subject to the one year/fifteen percent/three year cap of Section 502(b)(6)(A).

Chaim J. Fortgang & Thomas Moers Mayer, 6-94 Collier Bankruptcy Practice Guide ¶ 94.03 (Alan N. Resnick & Henry J. Sommer eds., 2005).

Accordingly, the Court must look to the Kmart Leases to determine whether the Deferred Basic Rent provided for under those leases is considered future rent, which would be subject to the cap, or past rent not subject to the statutory cap.

**D.     Deferred Rent under the Kmart Leases**

With these principles in mind, the Court turns to the terms of the Kmart Leases. Section 6 of the Kmart Leases provide for four types of "Rent", Basic Rent, Additional Rent, Late Payment, and Deferred Basic Rent. Basic Rent for the primary term of the lease is defined as "installments in the amounts set forth in the Rent

Schedule comprising a part of Exhibit C hereto, payable semi-annually on the dates set forth therein."  Kmart Leases ¶ 6.

Deferred Basic Rent is defined as follows:

Upon any termination of this Lease during the Primary Term as a result of the provisions of Section 14, 16, 20 or 34 hereof or for any other reason other than a termination arising out of Lessor's bankruptcy where Lessee elects to remain in possession, the Lessee shall pay to Lessor the amount shown on Exhibit C-1 as Deferred Basic Rent for the applicable date of termination.   The Deferred Basic Rent shall be paid by Lessee to the Lessor in the following manner: on each date on which Basic Rent would have been due and payable to Lessor during the remainder of the Primary Term had not the Lease been terminated Lessee shall pay to Lessor an amount equal to the Deferred Basic Rent for the termination date multiplied by a fraction, the numerator of which is the Basic Rent which would otherwise have been payable from the first Basic Rent payment date after the termination date through the end of the Primary Term. The obligation of Lessee to pay Lessor the Deferred Basic Rent as provided herein shall survive the termination of the Lease, and upon Lessor's request, Lessee will upon termination of this Lease execute and deliver written evidence of Lessee's obligation hereunder.

Kmart Leases ¶ 6(d).

The interpretation the Court derives from the Rent section of the leases is that if the lease is terminated, the lessee's obligation to pay rent for the remainder of the term switches from Basic Rent to Deferred Basic Rent.  If RM 18 Corp.'s claim was for this part of the post-termination deferred rent, it is clear that this type of claim would be for post-termination damages that are capped under the code.  However, RM 18 Corp. argues that an amount of both Basic Rent and Deferred Basic Rent had

accrued and was due and owing under the Kmart Leases at the time of termination. The Court agrees.

In the Court's view, the Bankruptcy Court should not have confined its analysis to the "Rent" section of the Kmart Leases. Further inspection of the leases in their entirety reveals that Deferred Basic Rent is a component of both pre-termination rent, which is not capped, and post-termination damages, which are capped under the Code. Section 20 of the Kmart Leases sets forth what are defined as "Current Damages." The leases state that "[i]n the event of any expiration or termination of the term of this Lease . . . , Lessee will pay to Lessor all Basic Rent, Additional Rent, and other sums required to be paid by Lessee to and including the date of such expiration, [or] termination . . . as liquidated and agreed <u>current damages</u>." Kmart Leases ¶ 20(f) (emphasis added). The leases then define the "other sums required to be paid" to include "all Deferred Rent accrued and unpaid to the date of such expiration which shall then be immediately due and payable[,] which would be payable under this Lease by Lessee in the absence of such expiration, [or] termination . . . ." Kmart Leases ¶ 20(f).

Contrary to the Appellees' argument, this section appears to obligate the lessee to pay Deferred Basic Rent as a component of "current damages" at the expiration of the term of the lease, regardless of whether or not the lease terminated due to an insolvency event listed in ¶6(d) of the Kmart Leases. Had the lease run its full course

and expired, the lessee would have been obligated under this section to pay all the Deferred Basic Rent that had accrued over the entire term, but had not been paid due to the deferral provision.

Indeed, the next section of the lease defines "Liquidated Damages," which takes into account the future rent that the lessee would have paid "in absence of expiration." Kmart Leases ¶ 20(g). These liquidated damages for future rent that also use Deferred Basic Rent as part of the calculation are undeniably capped under the Bankruptcy code. This section of the lease even takes the Bankruptcy Code into account by stating, "If any law shall limit the amount of such liquidated and final damages to less than the amount above agreed upon, Lessor shall be entitled to the maximum amount allowable under such law." Kmart Leases ¶ 20(g).

With reasonable certainty, it appears that under the leases the "current damages" section contemplates that the Deferred Basic Rent would be used to measure past and future rent. With regard to past rent, the obligation would accrue during the term and was to be paid at a later date, namely the expiration or termination of the lease. This comports with the plain meaning of the term "Deferred Rent," that is, rent that is owed but must be paid off at a later time. Rent obligations of this type that accrue during the term, only to be paid at a later date, are considered past rent that are not subject to the statutory cap. See In re Vause, 886 F.2d at 801.

Accordingly, the Court finds that the Deferred Basic Rent that had accrued during the term would not be subject to the statutory cap in section 502(b)(6) of the Bankruptcy Code.

**E.     The Reasonableness of the Settlement**

Under the terms of the Malese Stipulation, Kadish could not unreasonably withhold his consent to the Kmart Settlement.  "Where the [agreement] contemplates the exercise of discretion, this pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion."  Dalton v. Educational Testing Service, 87 N.Y.2d 384, 389, 663 N.E.2d 289, 291, 639 N.Y.S.2d 977, 979 (1995) (citation omitted).  The withholding of consent is reasonable if it is done in good faith and for a legitimate business purpose. See State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 169 (2d Cir. 2004).

It appears that RM 18 Corp. had a legitimate business purpose for withholding its consent.  RM 18 Corp. describes itself as the "remainderman" because it is entitled to the fee interest in the Aztex Properties after the estate for years expires.  The properties are encumbered by the mortgages that were taken out by Aztex Corp. in 1982 when the sale-leaseback of the properties was first structured.  Under the Malese Stipulation the parties agreed that any recovery from Kmart would be used first to pay down the principal and interest on the mortgage debt on the Aztex Properties, as was originally contemplated under the Aztex Leases, the Kmart Leases, and the Three

Party Agreements.  If the settlement with Kmart was for an amount far less than the principal and interest owed on the Aztex Properties, RM 18 Corp. may eventually inherit a property that is encumbered by a substantial mortgage debt.  Under these circumstances, RM 18 Corp. appears justified in seeking to protect itself by conditioning its consent to any settlement of Kmart Claims on the receipt of sufficient money to pay the liens on the property.  In addition, the claim for Deferred Rent on which RM 18 Corp. based its objection was neither arbitrary or irrational.

That said, whether the withholding of consent was unreasonable ultimately rests on the reasonableness of the settlement as a whole.  Fustok v. Conticommodity Services, Inc., 122 F.R.D. 151, 156–57 (S.D.N.Y. 1988).  This is a task that the Bankruptcy Court is well suited to handle, but apparently, did not undertake in this case. See Protective Committee for Independent Stockholders of TMT Trailer Ferry v. Anderson, 390 U.S. 414, 424, 88 S. Ct. 1157, 1163, 20 L. Ed. 2d 1 (1968) ("In bankruptcy cases, the court must approve any settlement of claims against the estate by the debtor as "fair and equitable"); In re Texaco, Inc., 84 B.R. 893 (Bankr. S.D.N.Y. 1988)).

The Court must therefore remand the case to the Bankruptcy Court to make a further determination consistent with this decision on whether the Kmart Settlement as a whole was reasonable.  In assessing the settlement, the bankruptcy court may consider: "(1) the probability of success in the litigation; (2) the difficulties that may

be encountered in collection; (3) the complexity of the litigation and the attendant expense, inconvenience, and delay; and (4) the "paramount" interest of the creditors." In re Prudential Lines, Inc., 170 B.R. 222, 246–47 (S.D.N.Y. 1994); In re Ionosphere Clubs, Inc., 156 B.R. 414 (S.D.N.Y.), aff'd, 17 F.3d 600 (2d Cir. 1994); see also Protective Committee for Independent Stockholders of TMT Trailer Ferry v. Anderson, 390 U.S. 414, 424, 88 S. Ct. 1157, 1163, 20 L. Ed. 2d 1 (1968) ("There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated.")

### III.  CONCLUSION

For all the foregoing reasons, it is hereby

**ORDERED**, that the June 27, 2005 order of the Bankruptcy Court is REVERSED, and the matter is REMANDED for further proceedings consistent with this Memorandum of Decision and Order; and it is further

**ORDERED**, that any future proceedings filed in this case before the Bankruptcy Court be entered in the case of Malese 18 Corp., No. 02-80586; and it is further

**ORDERED**, that the Clerk of Court is respectfully directed to close the case.

**SO ORDERED.**

Dated: Central Islip, New York
September 26, 2006

_____/s/ Arthur D. Spatt_____
ARTHUR D. SPATT
United States District Judge